(Reap. Dec. 9111)

## PLYWOOD & DOOR MANUFACTURERS CORPORATION v. UNITED STATES

Entry Nos. 702274, etc.

(Decided March 27, 1958)

*James Wilson Young* (*Richard Van Steenburgh* of counsel); *Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel), associate counsel; for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

MOLLISON, Judge: The 35 appeals for reappraisement listed in the schedule attached to this decision are from findings of value made by the appraiser in connection with birch plywood, exported from Finland during the period from approximately April 9, 1952, to July 15, 1953.

There is no dispute between the parties that the correct basis of value for the merchandise at bar was foreign value as defined in sec-

tion 402 (c), Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, 52 Stat. 1081, and reading as follows:

SEC. 402. VALUE.

 \* \* \* \* \* \* \*

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

It is the contention of the plaintiff that the usual wholesale quantity in which birch plywood, such as that here involved, was freely offered and sold in Finland for home consumption in the ordinary course of trade was 400 square meters or more, and that, in such transaction, a 10 percent discount from a basic price was allowed.

The basic price upon which plaintiff claims the 10 percent discount should be allowed is not in dispute, nor is there any dispute that a 3 percent discount for cash was allowable. It appears that, in appraising the merchandise, the appraiser allowed a 5 percent discount and the 3 percent cash discount. The dispute, therefore, centers upon the question of whether the 10 percent discount should be allowed, rather than the 5 percent discount.

The evidence indicates that birch plywood, such as that at bar, was, at the time of exportation of the instant merchandise, offered and sold in Finland for home consumption at discounts from the basic price of 10 percent, 7 percent, 6 percent, and 5 percent, and, in some instances, at 4 percent, or without discount.

Plaintiff seemingly bases its claim for allowance of the 10 percent discount upon two theories, which, while not necessarily opposed to one another, are somewhat inconsistent. The first theory is that the various discounts were quantity discounts, i. e., that the price at which the merchandise was offered for sale varied with the quantity purchased. Plaintiff contends for the application of the so-called "major portion of sales or offers for sale" rule, used for determining "the usual wholesale quantities," called for by the valuation statute, and relies upon evidence which it contends establishes that "the usual wholesale quantities" as determined under that rule was 400 square meters or more of birch plywood, and that the price applicable to offers of such quantities was the basic price, less the 10 percent discount, as well as the discount for cash.

In the case of *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, 44, C. A. D. 495, our appellate court succinctly stated the "major portion of sales or offers for sale" rule as follows:

This court has established that the language "in the usual wholesale quantities," as used in section 402, *supra*, refers to that particular wholesale quantity which constitutes the "major portion of sales or offers for sale" in wholesale quantities. *United States* v. *M. Minkus*, 21 C. C. P. A. (Customs) 382, T. D. 46912; *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093; *F. S. Whelan and Sons* v. *United States*, 39 C. C. P. A. (Customs) 168, C. A. D. 482.

It will be observed that this rule is applicable where merchandise is freely offered for sale *at different prices for different wholesale quantities*, and the purpose of the rule is to enable the selection of *one* wholesale quantity as "the usual wholesale quantities," from which it follows that the price at which that particular wholesale quantity was freely offered for sale would be the price contemplated by the statute.

However, in the case at bar, plaintiff contends that all offers and sales in quantities less than 400 square meters were offers and sales in retail quantities, which, under the principle enunciated in *United States* v. *Livingston & Southard, Inc.*, 23 C. C. P. A. (Customs) 214, T. D. 48060, and more recently in *United States* v. *Fisher Scientific Company*, 40 C. C. P. A. (Customs) 164, C. A. D. 513, are not to be considered in the determination of valuation, inasmuch as the statute is concerned only with the price at which merchandise is freely offered for sale in *wholesale* quantities.

In other words, then, plaintiff in effect contends that there was only one wholesale quantity in which the merchandise was offered and sold, i. e., 400 square meters or more. In such a case, there would be no field for the application of the "major portion of sales or offers for sale" rule, which, as has been pointed out, presupposes that the merchandise is offered for sale in more than one wholesale quantity.

Apparently, acting under the suggestion by our appellate court in the *Fisher Scientific Company* case, *supra* (at p. 170), plaintiff has submitted in plaintiff's exhibit 2 a summary of all sales made for home consumption in Finland by the manufacturer and exporter of the instant merchandise during the period from May 1, 1952, to and including December 31, 1953. Although other objections were made to the admission in evidence of the said exhibit, which were overruled, no objection was made on the ground that the period selected was not representative for the purpose of the "major portion of sales or offers for sale" rule.

Assuming, as appears likely, that plaintiff offered the summary of sales as proof of its contention under the "major portion of sales or offers for sale" rule, for that purpose all of the quantities shown thereon must be considered to be wholesale quantities. The exhibit lists the details of 215 sales involving a total quantity of 54,301.87 square meters.

The sales are separated according to the discount allowed, and it appears from the exhibit that there were 65 sales out of the total of

215 on which the 10 percent discount was allowed. This number of sales exceeds the number of sales in each of the other discount brackets.

However, it clearly appears that all of the 65 sales did *not* involve quantities of 400 square meters or more *sold at one sale*. As a matter of fact, only 22 of the sales made at the 10 percent discount were of that quantity. Plaintiff contends that the 10 percent discount was allowed where the "average" quantity sold was 400 square meters or more, and, in the brief filed in its behalf, its counsel uses the term "weighted average." There is nothing in the record to show how the "average" was arrived at or how it was "weighted." In any event, I am satisfied that, generally, "the usual wholesale quantities" called for by the statute are those involved in one transaction of offer or sale, and that "average" or "weighted average" quantities cannot be considered in determining "the usual wholesale quantities" for the purpose of the valuation statute, at least in the absence of evidence showing that, in the ordinary course of trade, the usual wholesale quantities were offered or sold in the market by average or weighted average quantities. No such evidence appears here.

I am satisfied, therefore, that, considered from the standpoint of the application of "major portion of sales or offers for sale" rule, plaintiff has failed to establish facts which would support its contention thereunder.

However, it is manifest from a perusal of the evidence offered by the plaintiff that, in any case where the sale involved 400 square meters or more, the 10 percent discount was allowed, and it is plaintiff's contention that any quantity less than 400 square meters was a retail quantity and, under the *Livingston & Southard* and *Fisher Scientific Company* cases, *supra*, is not to be considered in determining value under the statute.

The principle of law upon which plaintiff relies is well established, but the writer is of the opinion that the record does not establish that quantities of less than 400 square meters were, in the Finnish market, retail, as distinguished from wholesale, quantities.

A reading of the brief filed in behalf of the plaintiff indicates that plaintiff's case is predicated upon the conclusion that quantities sold to consumers who do not generally purchase for resale were *ipso facto* retail quantities.

What would be a retail quantity, as distinguished from a wholesale quantity, of course, depends upon the facts in each particular case. According to both lexicographic and judicial authorities, the term "retail" generally refers to sale in small quantities, usually to ultimate consumers, while the term "wholesale" generally refers to sale in large quantities, usually to persons who intend to resell. See definitions of "retail" and "wholesale" in Webster's New International Dictionary, 2d edition, 1945, and Funk & Wagnalls New Standard

Dictionary, 1942, and the judicial constructions of those terms, as contained in volumes 37A and 45 of Words and Phrases.

Of course, it is well recognized that many consumer purchasers buy goods at wholesale or in wholesale quantities. This is particularly true in the case of purchasers, such as manufacturers, in the purchase of materials to use in producing other goods or articles, or of purchasers, such as large consumers, e. g., hotels, in the purchase of furniture. Consequently, the fact, standing alone, that a purchaser or class of purchasers is a consumer would not necessarily categorize the quantities in which he buys as retail quantities.

The evidence that plaintiff relies upon to establish the facts under its contention is contained in two affidavits, received in evidence as plaintiff's exhibits 1 and 2, executed by one Martin Slotte, commercial director of the manufacturer and exporter of the merchandise in question.

By reason of his background and experience, as delineated in plaintiff's exhibit 1, it would appear that Mr. Slotte was qualified to give evidence as to the "trade customs and the practices prevailing in * * * [the plywood] business in the home market in Finland." Among such trade customs and practices obviously would be the trade understanding of what was considered to be a retail, as distinguished from a wholesale, quantity in the offer and sale of plywood for home consumption in Finland.

However, the statements of Mr. Slotte in the affidavits are in certain vital instances impaired by contradictory evidence offered in support of the statements.

The gist of Mr. Slotte's statements as to retail quantities is to the effect that there are no large consumers of plywood in Finland and that the market for home consumption sales consists of two types of purchasers—plywood dealers or wholesalers who sell to small users, and carpenter and cabinet shops who purchase as their needs arise and do not invest in a large stock. Only the dealers or wholesalers purchase in quantities of 400 square meters or more, which Mr. Slotte characterizes as a "usual wholesale quantity," all other sales, he says, being in the nature of retail sales.

Attached to plaintiff's exhibit 1, and marked exhibit B, is a sheet entitled "PLYWOOD DISCOUNTS DOMESTIC SALES, Effective May 1, 1952." This was supplied in Finnish, with an English translation, and is the same as a sheet marked "Exhibit No. A–1," attached to defendant's collective exhibit A, the report of a Treasury liaison officer on the subject.

It clearly appears that exhibit B of plaintiff's exhibit 1 was supplied by Mr. Slotte to explain the fact that exhibit A–1 was not, in fact, a price list and did not circulate in the trade in Finland. However, Mr. Slotte does say that the sheet was "intended for the clerks who

handled incoming domestic orders *and was based on past experience"* [italics added].

Exhibit B indicates that there were five classes of purchasers of merchandise such as that at bar in Finland, to wit, (1) plywood distributors, (2) plywood dealers, (3) wholesalers and hardware stores, (4) the woodworking industry, and (5) other industries. Being based "on past experience," it would seem to indicate that there were other purchasers in the market than those in the two categories referred to by Mr. Slotte.

Again, in plaintiff's exhibit 1, Mr. Slotte characterizes the discounts allowed in the home market as "quantity" discounts as follows:

It will be noted from the foregoing sales record for the period commencing May 1st 1952 through December 31st 1953 that the discounts offered and given follow a definite pattern and are quantity discounts. A discount of 10% was given for a quantity of 400 square meters or more, 7% for a quantity of approximately 180 square meters and 5% or 6% if the sale averaged about 160 square meters.

As has already been noted, it appears that, in every case where the amount purchased in one sale was 400 square meters or more, the 10 percent discount was allowed, but Mr. Slotte's statement as to the lesser discounts is not borne out by an examination of the summary of sales attached to plaintiff's exhibit 2.

Reference to the list of sales shows that 14 out of 47 sales on which a discount of 5 percent was allowed were in quantities in excess of 180 square meters, and that 17 out of 42 sales on which a discount of 6 percent was allowed were in quantities in excess of 180 square meters. If the discount structure was as stated by Mr. Slotte, it would seem that these sales should have been accorded discounts of 7 percent.

In the face of these discrepancies, Mr. Slotte's statements as to the quantities which represented retail, as distinguished from wholesale, quantities cannot be accepted as sufficient evidence of the facts as to what constituted a retail quantity for home consumption in Finland. While in no sense attempting to determine the question of what was or was not a retail or wholesale quantity in the offer and sale of plywood, such as that at bar, for home consumption in Finland at or about the time of exportation of the instant merchandise, it is observed that the quantities designated by Mr. Slotte as retail quantities seem to be rather large. A quantity of 400 square meters of plywood is said by Mr. Slotte to be roughly equivalent to 275 panels of plywood, 50 by 50 inches. Reference to the list of sales shows many sales, claimed to be of retail quantities, in the 200 and 300 square meter class, which would involve roughly 140 to 210 panels. This would appear to be a large quantity to be considered a retail quantity, and if it were so regarded in the Finnish market, it would seem that evidence of that fact would be procurable.

I am of the opinion that the plaintiff has failed to establish the facts necessary to support the contention that at or about the time of exportation of the involved merchandise offers and sales of less than 400 square meters of plywood such as that involved in Finland for home consumption were retail offers and sales.

Preliminary to the trial of the main issues in these cases, counsel for the parties agreed that, in his returns of value in certain cases enumerated in the schedule attached to this decision, the appraiser committed certain clerical errors, and that, without prejudice to plaintiff's claim for lower values, the values set forth in finding of fact No. 4, *infra*, are the values at which the merchandise should have been appraised.

A review of the entire record reveals that, except as just noted, plaintiff has failed to make out a *prima facie* case in favor of any values other than those returned by the appraiser.

I find as facts:

(1) That the merchandise involved herein consisted of birch plywood, exported from Finland during the period from approximately April 9, 1952, to July 15, 1953.

(2) That, at the time of exportation to the United States of the involved merchandise, such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of Finland for exportation to the United States.

(3) That at the said time such or similar merchandise was freely offered for sale for home consumption to all purchasers in the principal markets of Finland, in the usual wholesale quantities and in the ordinary course of trade.

(4) That the market value or price, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, at which such or similar merchandise was so offered for sale, was as follows:

| Reappraisement No. | Item | Market value or price per thousand square feet |
|---|---|---|
| 262740–A | ¾" BJ/BB 60" x 48" | US $235.13 |
| | All other items | As appraised |
| 263018–A | ½" BJ/BB 48" x 48" | $151.49 |
| | All other items | As appraised |
| 263829–A | ⅝" BB/WG 60" x 30/36" | $171.93 |
| | All other items | As appraised |
| 263815–A | ⅝" BB/WG 36" x 24" | $163.57 |
| | All other items | As appraised |
| Remainder of appeals enumerated in attached schedule. | All | As appraised |

I conclude as matter of law:

1. That the proper basis of value of the involved merchandise is foreign value, as defined in section 402 (c), Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, and

2. That such value in each case was as set forth in finding of fact No. 4, above.

Judgment will issue accordingly.